IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| ROCKWELL COLLINS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AVCOM AVIONICS & INSTRUMENTS, INC., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. C04-63EJM |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Rockwell Collins, Inc. ("Collins"), by its attorneys, complains against Defendant Avcom Avionics & Instruments, Inc. ("Avcom") and for its claims for relief alleges and states as follows.

## NATURE OF THE ACTION

1.      This action arises out of Avcom's misappropriation, misuse and sale of Collins' intellectual property, and Avcom's steadfast refusal to acknowledge Collins' rights to be fairly compensated for the use and misuse of that technology.  In particular, Avcom repeatedly copied and sold software developed and owned by Collins in violation of Collins' intellectual property rights.  In doing so, Avcom falsely represented that it had properly acquired a license to use the Collins software by using Collins' registered trademark (COLLINS®), in further violation of Collins' rights.

2.      Since Avcom's actions were discovered by Collins and the Federal Aviation Administration (the "FAA"), Avcom has failed to pay Collins the license fees owed for Avcom's use and misuse of the software.  Instead, it has expressed to Collins its purported view that it

should not be required to pay such bona fide license fees, and has accused Collins of violating the United States antitrust laws by attempting to collect them.

3.      Accordingly, Collins seeks by this action compensation for damages arising from Avcom's violations of Collins' intellectual property and other rights; an injunction prohibiting Avcom from infringing Collins' intellectual property rights in the future; and a declaratory judgment that Collins has not violated the United States antitrust laws by seeking to recover from Avcom the fair value of its intellectual property.

## JURISDICTION AND VENUE

4.      This action arises under 17 U.S.C. §§ 503-05, 15 U.S.C. §§ 1114-17, 1125(a), 1125(c), and 28 U.S.C. 2201-02, and principles of common law of the state of Iowa.

5.      The parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

7.      Defendant Avcom has transacted business in this judicial district, and is subject to personal jurisdiction in this judicial district. The claims asserted herein arose in substantial part in this judicial district.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c). Avcom has transacted substantial business with Collins and its predecessors in this district and has entered into numerous contracts with Collins over many years. Since 2000, Avcom has placed hundreds of orders for goods and services with Collins' (and its predecessors') facilities in Cedar Rapids, Iowa, totaling more than $875,000. In 2003 alone, Avcom purchased more than $310,000 in goods and services from Collins' Cedar Rapids facilities. This action arises out of Avcom's repeated business interactions and contractual relations with Collins in this district.

## PARTIES

9.    Plaintiff Collins is a Delaware corporation with its corporate headquarters and principal place of business at 400 Collins Road N.E. in Cedar Rapids, Iowa.

10.    Collins was founded in 1933, in Cedar Rapids, Iowa, as the Collins Radio Company, a manufacturer of short wave radio equipment.  Today, Collins manufactures and sells aviation electronics ("avionics"), communications equipment, and other aviation technology products and services to the government, aircraft manufacturers, aircraft operators, and others.

11.    Defendant Avcom is a Florida corporation with its principal place of business in Miami, Florida.  According to published information about the company, Avcom services avionics for aircraft operators.  Avcom does not compete with Collins in the commercial market for the manufacture or sale of avionics.

## BACKGROUND

### TCAS:  GENERAL

12.    The Traffic Alert and Collision Avoidance System – generally referred to as "TCAS" – is, as its name suggests, an avionics system designed and intended to prevent mid-air collisions.  According to the FAA, "TCAS was designed to increase cockpit awareness of proximate aircraft and to serve as a 'last line of defense' for the prevention of mid-air collisions."

13.    TCAS was developed as part of a collaborative effort on the part of the FAA and various private entities in the aviation technology community.  TCAS systems were first installed in aircraft in the early 1990s.  Since December of 1995, the FAA has mandated that, with limited exceptions, TCAS systems must be installed in commercial passenger aircraft with 10 or more seats.

14.    TCAS assists pilots in detecting the presence of nearby aircraft by scanning the vicinity and computing the range, relative bearing and altitude of the nearby aircraft.  The TCAS system provides both aural and visual warnings of a potential collision.

15.    TCAS does not rely upon the ground-based Air Traffic Control system.  Rather, the system depends upon the installation and proper functioning of individual TCAS units in

- 3 -

each aircraft. These units are manufactured and supplied by various avionics manufacturers, including Collins. Since TCAS was first developed, Collins has invested tens of millions of dollars to develop its version of the TCAS system, including various upgrades to the system.

16. A TCAS system includes both hardware and software components. The hardware components include a TCAS transmitter-receiver and computer (together constituting the TTR-920 TCAS unit), an air traffic control transponder, antennae, a control panel, and displays. In addition, each TCAS system relies on the use of proprietary software created and owned by the particular system's manufacturer. The software, in turn, relies, in part, upon certain algorithms developed by the FAA. The TCAS software runs on the computer housed in the TTR-920 TCAS unit, which is installed within the electronics bay of the aircraft.

17. During the early 1990s, the FAA required that all commercial passenger aircraft with 30 or more seats or weighing more than 33,000 lbs. adopt a more sophisticated version of TCAS, to be called "TCAS II." TCAS II systems use complex software programming to provide the pilot with crucial information as to how to maneuver in order to avoid a collision with another aircraft. TCAS II systems also coordinate with other TCAS II systems to ensure that complementary evasive maneuvers are taken. TCAS systems lacking such enhanced capabilities are referred to as "TCAS I" systems. Collins assisted the FAA in the development of TCAS II.

18. Owners of aircraft with 10 to 30 seats and weighing less than 33,000 lbs. have the option of installing either a TCAS I or a TCAS II system. Some owners choose to install TCAS II systems on such aircraft, even though TCAS II is not specifically required.

### TCAS: MARKETS AND COMPETITION

19. Collins does not manufacture TCAS I systems or compete for sales of TCAS I systems, which are offered by various competitors of Collins.

20. Two of Collins' competitors, Honeywell and Aviation Communications and Surveillance Systems ("ACSS"), manufacture and sell TCAS II systems in competition with Collins. Honeywell, a Fortune 50 company with 2003 revenues of approximately $24 billion, is

- 4 -

the world's largest avionics manufacturer. ACSS is a joint venture between Thales Avionics, a division of the Thales Group, a French aviation and aerospace corporation with 2003 revenues of over $10 billion (Euro), and L-3 Communications Holdings, Inc., a U.S. supplier of avionics communications equipment and other products.

21.     In addition to manufacturing and selling TCAS systems, Collins licenses software and sells products and services for TCAS repair and modification to end-users and third-party repair facilities. Collins competes with many other companies in the repair and modification of TCAS systems. In addition to third-party repair facilities, a number of airlines service their own TCAS products as well as the TCAS products of other aircraft operators.

22.     The servicing and/or modification of Collins' TCAS units does not constitute a relevant product market.

### COLLINS' CHANGE 7 SOFTWARE

23.     Since 1994, the FAA has promulgated, and has sometimes required, periodic upgrades of the TCAS II system. The latest revision to the system, referred to as "Change 7," was instituted in 1997 in order to improve the performance of the system and to decrease the number of false warnings.

24.     Collins' TCAS II owners can upgrade their units to comply with Change 7 without replacing them. In fact, the additional hardware requirements for Change 7 are minimal, and the vast majority of the upgrade (as measured both by cost of development and by relative expense to the customer) is comprised of the fee for the licensed software. Collins' Change 7 software incorporates over 350 revisions and a net addition of over 1100 lines of new code to the TCAS II software.

25.     In 1999, the FAA certified Collins' version of the Change 7 software. On October 22, 1999, after approval by the FAA, Collins issued "TTR-920-34-R" or "Service Bulletin R" ("SB R"), which sets forth the software license terms, required technical data,

approved parts, test/modification equipment, and workmanship standards for Change 7 upgrades of Collins' TCAS II equipment.

26.    Third parties may perform Change 7 upgrades under the terms of Service Bulletin R and the applicable FAA regulations.  However, third-parties must be certified by the FAA to perform such upgrades, and the FAA requires that they follow the TCAS manufacturer's technical requirements as set forth in its service bulletin.  In addition, the equipment, tools and material must be those recommended by the TCAS manufacturer, or at least equivalent to those recommended by the manufacturer, and they must be acceptable to the FAA.

27.    Collins allows the use of its Change 7 software only pursuant to a license agreement.  In particular, Service Bulletin R contains a "Collins Air Transport Systems Software License Notice" and "License Agreement" that expressly state that "[s]oftware developed for this service bulletin is copyrighted by Collins . . . ," and that  "the Buyer shall not copy . . . , modify, reverse engineer, decompile, or disassemble the software, or permit others to do so."  The Notice also states that "Buyer, upon placement of a purchase order for software, agrees to both the financial obligations as outlined in this license Notice and the content of the license Agreement [contained in the bulletin]."

28.    Collins' license agreements require that a licensee pay a fee for each use of the Change 7 software.  Service Bulletin R expressly states that "[i]f the software is intended to be installed on more than one platform, the purchase order must clearly state the number of platforms for which the use of the software is intended.  Seller will base the invoice value on the quantity specified.  Buyers' obligation will be based on the number of platforms to be modified, not on the number of disks requested."

29.    Collins' Change 7 software kit includes, in addition to the licensed software, electronic programmable memory devices, a speech processor device, and a replacement identification plate to be attached to the TCAS unit indicating that the upgrade has been accomplished according to the procedures set forth in Service Bulletin R.  The software component of the kit is generally stored on diskettes.  During installation, the software is

transferred onto circuit cards within the TCAS unit. In addition, Collins can load the Change 7 software directly onto existing circuit cards for installation in a TCAS unit.

30.     The identification plate included in the upgrade kit is a nameplate bearing the name "Collins Air Transport Division/Rockwell Collins, Inc." and the TCAS unit model number (TTR-920). There are five versions of the identification plate. Four versions are bar-coded and are sold with the unique part number representing that the Change 7 upgrade has been performed for a particular unit. Collins itself produces these plates, verifying that the Change 7 software is properly licensed for use with the TCAS unit in question. Another form of identification plate (the non-bar-coded plate) relies on the purchaser to annotate the plate with the Change 7 Collins part number, thereby representing that the Change 7 upgrade has been performed according to Service Bulletin R.

31.     Collins generally licenses the Change 7 software and sells the hardware components of the Change 7 upgrade as a single kit, including all licensed software and hardware, together. However, customers can and sometimes do purchase just the hardware. For example, a replacement identification plate can be purchased to replace an original that has been damaged or lost. In addition, customers can and sometimes do pay only the license fee for use of the Change 7 software without purchasing the hardware components of the Change 7 upgrade kit.

32.     Collins' price for the Change 7 software upgrade kit, together with a fee for a single-use license of the Change 7 software, is $3,483.00. The price for the hardware included in the kit, depending on the particular application, is between $132.00 and $142.00. The license fee for a single use of the Change 7 software license alone is $3,341.00. Collins' customers may also purchase a Change 7 upgrade package that includes installation. The price for this installation package, together with the fee for a single-use license of the Change 7 software, is $4,923.00.

### AVCOM'S MISAPPROPRIATION AND MISUSE
### OF COLLINS' CHANGE 7 SOFTWARE

33.     In April of 2002, at Avcom's request to Collins' Cedar Rapids facilities, Collins sent to Avcom a copy of Service Bulletin R.  The copy of Service Bulletin R sent to Avcom included the "Collins Air Transport Systems Software License Notice" and the "License Agreement."

34.     On or about December 26, 2002, Avcom sent to Collins one set of three circuit cards to have a copy of the Change 7 software installed pursuant to Service Bulletin R.

35.     In doing so, Avcom forwarded the cards to Collins' Seattle Service Center, although Avcom operated within the region of Collins' Atlanta Service Center, with which it sometimes dealt.  On information and belief, Avcom forwarded the cards to the Seattle Service Center to minimize the risk that Collins would uncover its wrongful conduct.

36.     On or about January 4, 2003, Collins sent Avcom an invoice setting forth the fee for upgrading the circuit cards with the Change 7 software.  Collins included with the invoice a copy of its "General Conditions of Sale."  This document contained the following "Software License for Equipment Specific Software": "Software delivered hereunder, either embedded in equipment described herein or specifically designed for use in or [with] such equipment, is copyrighted by Seller and shall remain the sole and exclusive property of Seller.  Seller grants the Buyer a perpetual, worldwide, nonexclusive license to use the software only in or with the equipment.  The Buyer shall not copy, modify, or disassemble the software or permit others to do so."

37.     Avcom signed the invoice and returned it on or about January 6, 2003.  In doing so, Avcom represented that it would comply with both the Service Bulletin R License Notice and Agreement, and with Collins' General Conditions of Sale, including the Software License for Equipment Specific Software provision.

38.     Upon information and belief, Avcom had the Change 7 software installed on the cards in order to surreptitiously reproduce the software, without authorization from Collins, and

without paying Collins the required license fee; to package it with the hardware required to perform the Change 7 upgrade; and to sell the upgrade to airline customers.

39.     In support of its scheme, after it had paid the license fee for a single use of the Change 7 software, Avcom purchased from Collins' Cedar Rapids facilities approximately seventy-two of the non-bar-coded "Collins" identification plates. Avcom purchased such identification plates for the apparent purpose of affixing them to the upgraded units and, thereby, falsely suggesting that the upgrades had been properly performed in compliance with Service Bulletin R.

40.     Upon information and belief, Avcom purchased the non-bar-coded Collins identification plates, as opposed to one of the versions of the bar-coded identification plates, because in purchasing the latter, it would have been required to identify by serial number the TCAS units upon which it was performing the Change 7 software upgrade.

41.     During the same time period, Avcom also separately purchased from Collins' Cedar Rapids facilities electronic programmable memory devices necessary to perform the Change 7 upgrade on up to 99 TCAS units.

### COLLINS' DISCOVERY OF AVCOM'S SOFTWARE PIRACY AND UNLAWFUL USE OF COLLINS' TRADEMARKS

42.     On or about February 23, 2004, SkyWest, a regional airline that operates primarily in the Western United States, delivered to Collins' Atlanta Service Center a defective TCAS II unit ("the TTR-920 unit") for servicing. The TTR-920 bore stickers indicating that Avcom had previously serviced the unit.

43.     The SkyWest TTR-920 unit also bore one of the non-bar-coded Collins identification plates bearing the Collins® trademark. The plates had been stamped with the Collins Change 7 upgrade part number, indicating that a Change 7 software upgrade had been performed in accordance with Service Bulletin R. Collins' service records, however, reflected that it had performed no such upgrade. Nor did Collins' records reveal that it had licensed the Change 7 upgrade software to anyone for installation in the SkyWest TTR-920 unit.

- 9 -

44.     Consistent with FAA requirements related to suspected unapproved parts, Collins "quarantined" the unit and notified the FAA. On March 19, Collins began an investigation of the SkyWest TTR-920 unit. Initially, the investigation revealed that the protective coating on the Change 7 hardware either was not present or was defective. Such coating is required to protect the hardware components against moisture contamination.

45.     The investigation further revealed that the SkyWest TTR-920 unit contained Collins' proprietary Change 7 upgrade software, which had been corrupted. The circuit cards in the SkyWest TTR-920 unit were different from the circuit cards on which the Collins' Seattle Service Center had installed the Change 7 software for Avcom.

46.     On March 20, the FAA inspected the SkyWest TTR-920 unit and reviewed Collins' findings. The FAA requested that Collins continue to quarantine the SkyWest TTR-920 unit and indicated that it would conduct an investigation into the facts relating to the upgrade of this unit and, possibly, other units.

47.     Upon information and belief, Avcom led SkyWest to believe that it had installed the Change 7 upgrade software in compliance with Service Bulletin R, including by entering into the necessary software licenses with Collins.

### THE FAA INVESTIGATION

48.     The FAA's investigation of Avcom is ongoing. However, upon information and belief, the FAA has learned to date that:

- Avcom attempted to mislead the agency into believing that Avcom had properly performed the upgrade in full compliance with Service Bulletin R by procuring the necessary license(s) from Collins;

- Avcom had failed to follow the technical data requirements prescribed by Service Bulletin R;

- Avcom's Change 7 software upgrade had been performed shoddily, and in a way that potentially endangered the performance of the unit;

- 10 -

- Avcom had not properly tested the Change 7 software upgrade, and, as a result, the unit could not properly record fault data;

- Avcom failed to conduct the final performance test as required under Service Bulletin R; and

- Avcom had performed as many as 70 deficient Change 7 software upgrades without using properly licensed Change 7 software.

49.    Because of Avcom's failure to follow the FAA-approved technical data in Service Bulletin R, the FAA concluded that the unit was not airworthy.

50.    On information and belief, the FAA has directed Avcom to remedy each of these deficiencies before attempting to perform any additional Change 7 software upgrades, and also to re-perform any Change 7 software upgrades that it had undertaken prior to the FAA's findings. The FAA further instructed Avcom that it must follow Service Bulletin R "without deviation."

## AVCOM'S CONTINUED REFUSAL TO ACKNOWLEDGE COLLINS' RIGHTS IN THE CHANGE 7 UPGRADE SOFTWARE

51.    Shortly after the FAA issued its findings, an Avcom representative, Ricardo Linares, contacted Collins to seek a quote for the license fee for use of the Change 7 upgrade software.

52.    Collins provided a quote of $3342.00 and informed Mr. Linares that the quote represented the fee for a single use of the Change 7 software.  In addition, Collins instructed Mr. Linares that the Change 7 upgrade must be performed according to Service Bulletin R, and that Avcom must employ the properly certified Change 7 software.

53.    On April 6, 2004, Avcom ordered one single use license for the Change 7 software for the quoted fee.  Subsequently, Avcom ordered additional single use licenses.

54.    The fee quoted to Avcom for use of the Change 7 software reflects Collins' standard license fee for use of the Change 7 software.

55.    During the course of Avcom's contacts with Collins' customer service representatives, Avcom repeatedly sought substantial but unspecified discounts for a license to

use the Change 7 upgrade software. Avcom sought a multiple use license that would cover installation of the Change 7 software on 230 TTR-920 units.

56.     While Avcom has indicated a willingness to pay the requested license fee for some of the units, it has continued to object to the license fee, asserting that it is "prohibitive," and that it prevents Avcom from competing with Collins.

57.     In fact, by letter dated April 27, 2004 (the "Cease and Desist Letter"), outside counsel for Avcom wrote to Collins' Associate General Counsel for Operations, accusing Collins of "refusing" to license the Change 7 software for a "reasonable price," and demanding that Collins change the fee it charges for use of the Change 7 software. Avcom's counsel accused Collins of price discrimination, and of monopolizing, or attempting to monopolize, a relevant market.

58.     The letter, signed by counsel from two different law firms (one located in Miami, Florida, and one located in Washington D.C.), closed by "demand[ing] that Rockwell cease and desist this anticompetitive conduct immediately" by "amend[ing] its pricing scheme so that the price offered does not reflect price discrimination."

59.     As a result of its receipt of the Cease and Desist Letter, Collins has a reasonable apprehension of being sued by Avcom for antitrust violations if Collins does not change its licensing fees, policies and practices relating to the Change 7 software upgrade.

60.     Consequently, an actual and justiciable controversy exists between Collins and Avcom concerning the legality of Collins' licensing fees, policies and practices relating to the TCAS Change 7 software upgrade. The resolution of the claims filed herein will resolve such controversy.

61.     In addition, Collins continues to enter into software licenses for use of the Change 7 software with Avcom and with other entities. Until the antitrust claims identified in the Cease and Desist Letter are resolved, Collins is forced to continue to engage in licensing activities in a manner that potentially exposes the company to continuing antitrust liability and mounting exposure to claims for monetary damages.

- 12 -

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

62. Collins incorporates by reference paragraphs 1 through 61 above as though fully set forth herein.

63. Collins owns a valid copyright in and to, and is the author of, the source code for the Change 7 software required under Service Bulletin R for the Change 7 upgrade of Collins' TCAS II systems.

64. Collins has complied in all respects with the Copyright Act and all other laws governing copyright, and has applied to the Register of Copyrights in order to obtain a Certificate of Registration for the Change 7 software.

65. Collins does not permit the unauthorized reproduction and/or distribution of its Change 7 software. Collins' customers enter into license agreements for the use of the Change 7 software for which customers are charged specified license fees.

66. Avcom's unlawful reproduction and distribution of Collins' copyrighted work, as complained of herein, infringes Collins' copyright in violation of 17 U.S.C. §§ 101 *et seq.* and is actionable as willful copyright infringement.

68. Collins has been, and will continue to be, irreparably harmed by reason of such infringement.

69. Avcom is liable to Collins for all damages flowing from such willful infringement and the infringer's profits pursuant to 17 U.S.C. § 504(a)(1).

70. In addition, Collins is entitled to statutory damages under 17 U.S.C. § 504 for any and all infringement commenced after the registration of Collins' copyright. Because any such infringement has been willful, deliberate and in utter disregard and derogation of Collins' rights, Collins is entitled to enhanced statutory damages pursuant to 17 U.S.C. § 504, and Collins is entitled to costs and attorneys' fees pursuant to 17 U.S.C. § 505.

71. Collins further asks that the court impound the infringing reproductions and related materials at issue pursuant to 17 U.S.C. § 503.

72.     To prevent further infringement by Avcom of Collins' copyright in its source code and software, and to prevent the attendant irreparable harm to Collins, an injunction should issue restraining Avcom, and all persons acting in concert with Avcom, from engaging in further such acts in violation of the copyright laws pursuant to 17 U.S.C. § 502.

## SECOND CLAIM FOR RELIEF
### (Federal Trademark Infringement)

67.     Collins incorporates by reference paragraphs 1 through 66 above as though fully set forth herein.

68.     On May 31, 1961, Collins filed an application, Serial No. 72/121,073, to register the mark "COLLINS" for "Navigation Equipment," including, inter alia, "radio transmitters and receivers," "flight control systems," "autopilots," and "course indicator instruments." Collins claimed a first use date of March 15, 1932. The opposition period concluded with no oppositions having been filed, and the registration certificate issued on October 2, 1962. Collins owns the above trademark and registration, the application, and the goodwill and reputation of the business connected with and symbolized by the mark.

69.     The COLLINS® mark has been valid and subsisting at all times relevant to this action and has achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

70.     Collins has invested substantially in ensuring the quality and consistency of products and services sold in association with its COLLINS® trademark and in the intellectual property that it licenses in association with its COLLINS® trademark. Collins has also invested substantially in advertising and otherwise promoting its COLLINS® trademark and the products and services associated with it.

71.     As a result of these efforts, purchasers of Collins' products and services and licensees of Collins' intellectual property, including purchasers of the Change 7 upgrade kit, purchasers of Change 7 installation services, and licensees of the Change 7 software, associate

the COLLINS® trademark with Collins and with products, services and technology of the highest quality.

72. Avcom's actions, as described above, constitute trademark infringement under 15 U.S.C. §§ 1114 and 1115 as well as "passing off," unfair competition and false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73. As alleged above, upon information and belief, Avcom has sold, reproduced and/or misappropriated Change 7 software in connection with selling Change 7 installation services.

74. In addition, as alleged above, Avcom attached identification plates bearing the COLLINS® trademark to TCAS units that it had serviced in order to indicate that they had been upgraded according to Collins' Service Bulletin R.

75. Upon information and belief, Avcom intended to induce customers to purchase its Change 7 installation package by leading them to believe it was installing properly licensed and FAA-certified Change 7 software.

76. Upon information and belief, Avcom's actions represent an attempt to misappropriate and exploit the goodwill developed by Collins.

77. Because Avcom used marks that were in fact identical to the trademarks owned by Collins, there was and is a high likelihood, indeed a certainty, of consumer confusion.

78. Avcom's actions and misuse of Collins' trademarks have confused and deceived consumers and have damaged the reputation of Collins among consumers.

79. Upon information and belief, Avcom has profited from its infringing activities.

### THIRD CLAIM FOR RELIEF
### (Counterfeiting of Goods and Services Sold Under the COLLINS® Trademark)

80.     Collins incorporates by reference paragraphs 1 through 79 above as though fully set forth herein.

81.     Defendant Avcom has promoted and used in commerce spurious marks that are identical to, or substantially indistinguishable from, Collins' registered marks, in connection with goods and/or services for which Collins owns the registered COLLINS® trademark.

82.     Avcom's use is likely to cause confusion or mistake or to deceive.

83.     Avcom's acts complained of herein have been intentional and with full knowledge that the trademarks that it has used in connection with its purported installation of the Change 7 software are counterfeit marks, with conscious disregard of Collins' rights in the COLLINS® mark.

84.     Avcom's acts complained of herein are in willful violation of 15 U.S.C. §§ 1116 and 1117.

### FOURTH CLAIM FOR RELIEF
### (Violation of Section 43(a) of the Lanham Act)

85.     Collins incorporates by reference paragraphs 1 through 84 above as though fully set forth herein.

86.     Avcom has made false or misleading representations of fact in interstate commerce and in connection with goods or services in commercial advertising or promotion. Those representations have misrepresented the nature, qualities, and/or origin of Avcom's goods, services, or commercial activities.  Collins has been or is likely to be damaged by these acts.

87.     These material representations were false when made and Avcom knew the statements were false.

88.     The false representations actually have confused and deceived, and have had the tendency to confuse and deceive, a substantial number of actual or potential Collins customers concerning the characteristics of products and services sold by Avcom in interstate commerce.

89.     Avcom's actions, as described above, constitute unfair competition, "passing off" and false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.     By reason of the above-described violations, Collins has lost sales, profits, and goodwill, and has suffered injury to its business reputation. Collins has been and will continue to be injured in its efforts to sell products and services and to effectively license its intellectual property. Collins has sustained and will continue to sustain damages, the nature and extent of which cannot presently be determined.

91.     Avcom will, unless otherwise restrained by this Court, continue its unlawful acts to the irreparable injury of Collins, for which there will be no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### (Unfair Competition)

92.     Collins incorporates by reference paragraphs 1 through 91 above as though fully set forth herein.

93.     Avcom has intentionally, knowingly, wrongfully, and in bad faith engaged in a pattern of conduct aimed at depriving Collins of the value of its intellectual property, misappropriating the same for the benefit of Avcom.

94.     In selling its Change 7 installation packages to aircraft operators, Avcom has intentionally passed off misappropriated Change 7 software as properly licensed, FAA-certified Change 7 software.

95.     Avcom has intentionally misled aircraft operators into believing that the Change 7 software installed by Avcom was properly owned by, or licensed to, Avcom.

96.     Avcom's conduct is likely to result in confusion in the marketplace.

- 17 -

97. Avcom has engaged in unfair competition by falsely claiming ownership of Collins' intellectual property.

98. As a direct result of Avcom's unfair competition, Collins has suffered, and will continue to suffer, damage to its reputation, goodwill, and business in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets)**

99. Collins incorporates by reference paragraphs 1 through 98 above as though fully set forth herein.

100. Collins has expended substantial time, effort and monetary resources in the design and development of the copyrighted Change 7 software.

101. The Change 7 software contains commercially valuable computer program codes, processes, and other information constituting trade secrets.

102. These trade secrets are proprietary to Collins, are not publicly known to or readily ascertainable by the public, and derive independent economic value from the fact that they are not generally known or readily ascertainable.

103. At all relevant times, Collins used and is using reasonable efforts to protect the confidentiality of these trade secrets.

104. Avcom gained access to the Change 7 software through the confidential relationship created by its initial entrance into a single-use license for the Change 7 software.

105. Avcom gained access to the Change 7 software through improper means, including, but not limited to, theft, misrepresentation, and/or breach or inducement of a breach of duty to maintain secrecy.

106. Avcom knew that the information contained in the Change 7 software was a valuable commercial asset of Collins, and that Collins had expended much time, effort and money in developing the trade secret information.

107.    Upon information and belief, Avcom copied and used Collins' trade secret information without permission for its own commercial advantage.

108.    By engaging in the conduct described herein, Avcom has misappropriated Collins' trade secrets in violation of Iowa Code Chapter 550.

109.    Collins has been and continues to be damaged as a direct and proximate result of Avcom's misappropriation, including but not limited to loss in the value of its trade secrets.

110.    Avcom's misappropriation of Collins' trade secrets was and is willful and malicious, and on those grounds, Collins seeks an award of exemplary damages to punish and deter such conduct, and an award of attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (Conversion)

111.    Collins incorporates by reference paragraphs 1 through 110 above as though fully set forth herein.

112.    Through its wrongful actions, Avcom has intentionally converted Collins' intellectual property to its own use and benefit without Collins' permission.

113.    Through its actions, Avcom exercised wrongful control over Collins' intellectual property.

114.    Collins has sustained damages as a result of Avcom's conversion of its property and is entitled to recover damages from Avcom.

115.    Avcom's conversion of Collins' intellectual property was and is willful and malicious, and on those grounds, Collins seeks an award of exemplary damages to punish and deter such conduct, and an award of attorneys' fees.

## EIGHTH CLAIM FOR RELIEF
### (Intentional Interference with Existing and Prospective Economic Relations)

116.    Collins incorporates by reference paragraphs 1 through 115 above as though fully set forth herein.

117.    Collins is actively engaged in the development, manufacture and sale of Change 7 upgrade hardware products and Change 7 upgrade installation services to aircraft operator customers, including SkyWest.  In addition, Collins is actively engaged in the licensing of its Change 7 software for use by aircraft operator customers.

118.    Avcom is fully aware of these business relationships and the importance of the relationships to Collins' continued commercial success.

119.    Avcom has intentionally interfered with these relationships through improper means, including by representing that the Change 7 software included in the Change 7 upgrade installation packages sold by Avcom was properly licensed and/or certified.

120.    But for Avcom's tortious interference, Collins would have sold the Change 7 upgrade hardware and the Change 7 upgrade installation services sold by Avcom, and would have entered into licenses for use of the Change 7 software installed by Avcom.

121.    Collins has suffered damages from Avcom's tortious interference with its existing and prospective economic relations in an amount to be determined at trial.

122.    Avcom's tortious interference with Collins' existing and prospective economic relations was and is willful and malicious, and on those grounds, Collins seeks an award of exemplary damages to punish and deter such conduct, and an award of attorneys' fees.

### NINTH CLAIM FOR RELIEF
#### (Breach of Contract)

123.    Collins incorporates by reference paragraphs 1 through 122 above as though fully set forth herein.

124.    The license agreement pertaining to the Change 7 software upgrade, as set forth in Service Bulletin R, and Collins' General Conditions of Sale (including the Software License for Equipment Specific Software provision), are valid written contracts between Collins and Avcom.

125.    Collins fully performed its obligations under such contracts, is not in default of its obligations thereunder, and has complied with all conditions precedent.

126.     The actions and omissions of Avcom by, among other things, copying the Change 7 software and installing the Change 7 software on TCAS units for which the Change 7 software was not licensed for use, constitute breaches of the contracts between Collins and Avcom.

127.     Collins has been and continues to be irreparably injured as a result of Avcom's material breaches of its contracts with Collins. Collins has also been damaged in an amount that cannot be fully determined at this time.

## TENTH CLAIM FOR RELIEF
### (Declaratory Judgment – Price Discrimination)

128.     Collins incorporates by reference paragraphs 1 through 127 above as though fully set forth herein.

129.     There is a justiciable controversy between Collins and Avcom with respect to all of the issues described above.

130.     Collins' licensing practices and policies relating to the Change 7 software are not subject to the Robinson-Patman Act, 15 U.S.C. § 13 (2000), and, in any event, are not discriminatory.

131.     Collins' licensing practices and policies relating to the Change 7 software are not exclusionary or predatory, and do not result in antitrust injury.

132.     Collins is entitled to a declaration that such practices and policies do not violate the Robinson-Patman Act, 15 U.S.C. § 13 (2000) or any applicable state law.

## ELEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment - Monopolization)

133.     Collins incorporates by reference paragraphs 1 through 132 above as though fully set forth therein.

134.     There is a justiciable controversy between Collins and Avcom with respect to all of the issues described above.

135.    Collins' licensing policies and practices relating to the Change 7 software do not constitute the willful acquisition or maintenance of monopoly power, or an attempt to monopolize a relevant market.

136.    Collins' licensing practices and policies relating to the Change 7 software are not exclusionary or predatory, and do not result in antitrust injury.

137.    Collins has no market power in any relevant market.

138.    Therefore, Collins is entitled to a declaration that its licensing pricing policies and practices relating to the Change 7 software do not violate Sherman Act Section 2, 15 U.S.C. § 2 or any applicable state law.

## PRAYER FOR RELIEF

Therefore, Collins respectfully requests that the Court award it the following relief:

a.    That Collins recover defendant Avcom's profits from the sale of infringing products in violation of 15 U.S.C. §§ 1114-15, 1116-17, 1125(a) and 1125(c);

b.    That Collins be awarded compensatory damages;

c.    That Collins be awarded damages pursuant to 17 U.S.C. § 504;

d.    That Collins be awarded statutory damages for any infringing activity commenced after registration of its copyright pursuant to 17 U.S.C. § 505;

e.    That Collins be awarded punitive damages;

f.    That Collins be awarded costs, expenses and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

g.    That Collins be awarded statutory and/or enhanced damages, together with attorneys' fees, and prejudgment interest pursuant to 15 U.S.C. § 1117(b);

h.    That Collins be awarded pre- and post- judgment interest on the damages caused to it as a result of the wrongful acts alleged herein;

i.    That defendant Avcom be enjoined and restrained from: (i) any further violation of Collins' copyright in the Change 7 software, (ii) any further violation of Collins'

- 22 -

trademark rights; (iii) any further misappropriation of Collins' trade secrets; (iv) any further conversion of Collins' intellectual property; and (vi) and any further tortious interference with Collins' prospective business relationships;

   j.   That this Court adjudge and decree that Collins' licensing policies and practices relating to the Change 7 software do not violate the Robinson-Patman Act, 15 U.S.C. § 13 (2000) or any applicable state law;

   k.   That this Court adjudge and decree that Collins' licensing policies and practices relating to the Change 7 software do not violate do not violate Sherman Act Section 2, 15 U.S.C. § 2 or any applicable state law;

   l.   That this Court enjoin Avcom from prosecuting an action against Collins for violation of any of the antitrust laws of the United States arising from or relating to Collins' licensing policies and practices relating to the Change 7 software; and

   m.  That Collins be granted such other and further relief as may be just and proper.

## JURY DEMAND

Collins demands trial by jury on all issues so triable.

Respectfully submitted,


/s/ Robert D. Houghton
_____
Robert D. Houghton
Mark L. Zaiger
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 Third Street SE, Suite 500
Cedar Rapids, Iowa 52401
(319) 365-9461


Of Counsel:                                  Edward B. Schwartz
                                             John Nilsson
                                             HOWREY, SIMON ARNOLD & WHITE, LLC
                                             1299 Pennsylvania Ave., N.W.
                                             Washington, D.C.  20004
                                             (202) 783-0800

                                             Attorneys for
                                             ROCKWELL COLLINS, INC.

Dated:  May ____, 2004